UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 OCT -2 PM 2: 26

CLERK

BY____*EH*____
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>ROBIN L. KELLER,<br>CAPTIAL ONE BANK and<br>ANY TENANTS OR OCCUPANTS RESIDING AT<br>25 GILMAN STREET<br>ST. ALBANS, VERMONT 05478,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil No. 2:18-cv-160<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR FORECLOSURE BY POWER OF SALE

**NOTICE TO DEFENDANTS**:  In order to receive notice of the Foreclosure Judgment, you are required by law to enter an appearance in this action either through an attorney or on your own behalf after service has been made upon you by the United States of America and you have returned your waiver of service of summons to the Office of the United States Attorney.  If such appearance is not filed with the Clerk of the United States District Court within sixty (60) days of service of this Complaint, you will not receive notice of the Foreclosure Judgment which will set forth the amount of money you must deposit to redeem the property and the amount of time allowed you to redeem the property.

### NOTICE TO ALL TENANTS AND OCCUPANTS
### OF REAL PROPERTY AS REQUIRED BY 12 V.S.A. § 4932(c)(2):

**THE PROPERTY IN WHICH YOU LIVE IS BEING FORECLOSED UPON.  YOU ARE NAMED AS A DEFENDANT IN THE FORECLOSURE BECAUSE YOUR RIGHT TO REMAIN ON THE PREMISES MAY END WHEN THE FORECLOSURE IS COMPLETED.  YOU MUST NOTIFY THE COURT OF YOUR NAME AND ADDRESS IN ORDER TO BE KEPT INFORMED OF THE STATUS OF THE FORECLOSURE. YOU ARE ALSO ADVISED, PURSUANT TO 12 V.S.A. § 4932(c)(3), THAT, IN THE EVENT THE OWNER IS UNABLE TO REDEEM THE PREMISES, YOU MAY BE REQUIRED TO VACATE THE PREMISES UPON 30 DAYS NOTICE.**

The United States of America, by its attorney, Christina E. Nolan, United States Attorney for the District of Vermont, brings this Complaint and states as follows:

## Introduction, Jurisdiction, and Parties

1.     This is a civil action to foreclose by power of sale a mortgage given by Defendant Robin L. Keller ("Borrower") and David H. Keller, to the Plaintiff, the United States of America ("the United States"), on or about June 5, 1990.   This action further seeks to foreclose a mortgage assumed by the Borrower securing a debt owed by Paula B. Hill.   These mortgages are secured by property located at 25 Gilman Street, St. Albans, VT ("mortgaged property").

2.     David H. Keller has been divested of all right title and interest in the mortgaged property, by virtue of a quitclaim deed dated August 7, 1995 and recorded in the land records for the City of St. Albans at Book 102, Page 411.   David H. Keller was released from liability on the debt by the United States.

3.     This Court has jurisdiction in this matter under 28 U.S.C. § 1345 and 42 U.S.C. § 1490a.

4.     The mortgaged property has been abandoned by the Borrower and is not presently occupied by her as her primary residence.

5.     On information and belief the last known addresses of the Defendants are as follows:

Robin L. Keller
59 Lincoln Avenue, Apt # 2
St. Albans, VT  05478

Capital One Bank
c/o Erin M. Reczek, Esq.
Ratchford Law Group, P.C.
89 Newbury Street, Suite 205
Danvers, MA  01923

Any Tenants or Occupants residing at
25 Gilman Street
St. Albans, VT  05478

6.      Capital One Bank has been named a party to this action because it claims or may claim to have some interest or lien upon the mortgaged premises, or some part thereon, by virtue of a judgment lien obtained April 29, 2009 and recorded in the City of St. Albans land records on September 26, 2012 at Book 257, Page 50.  The interest or lien, if any, is subsequent or subordinate to the mortgage which is the subject of this action.

7.      Tenants or Occupants of the mortgaged premises, if any, are named as defendants pursuant to 12 V.S.A. § 4932(c)(1) for the purpose of providing notice of the pendency of this action.  The United States does not know whether the property will be tenant-occupied at the time the judgment order, decree of foreclosure, and order for judicial sale are entered in this proceeding.  Such tenants or occupants, if any, are entitled to notice of these proceedings but are not entitled to a right of redemption.  In the event that the mortgage is foreclosed, the interests of all tenants or occupants, if any, shall be foreclosed and they shall have no further interest as tenants, occupants, or otherwise, in the property.  The United States, or the purchaser at the judicial sale, shall have the right to seek and enforce a writ of possession and neither the United States nor the purchaser at the judicial sale shall be obligated or required to institute an eviction proceeding against any tenants or occupants.

### Foreclosure by Power of Sale

8.  On or about June 5, 1990, Robin L. Keller ("Borrower") and David H. Keller executed an assumption agreement and assumed the indebtedness owed by Paula B. Hill to the United States of America, in the amount of $68,635.72 bearing interest at the rate of 8¾ % per annum. A copy of the assumption agreement is attached to and made a part of this complaint as Exhibit A.

9.      The assumption agreement is secured by a real estate mortgage ("Hill mortgage") covering certain land and premises described therein dated August 18, 1987.  A copy of the Hill mortgage is attached to and made a part of this complaint as Exhibit B.

10.     The Hill mortgage was duly recorded on August 18, 1987 in the City of St. Albans Land Records at Volume 60, Page 115-118.  Paragraph 25 of the Hill mortgage reserves to the United States the right to foreclose the mortgage as authorized by state and/or federal laws, including but not limited to foreclosure by power of sale.

11.     On or about June 5, 1990, the Borrower and David H. Keller executed to the United States of America a real estate mortgage ("Keller Mortgage") covering certain land and premises described therein.  Paragraph 25 of the mortgage reserves to the United States the right to foreclose the mortgage as authorized by state and/or federal laws, including but not limited to foreclosure by power of sale.  A copy of the mortgage is attached to and made a part of this Complaint as Exhibit C.

12.     The Keller mortgage was duly recorded on June 6, 1990 in the City of St. Albans Land Records in Book 74, Pages 322-28.

13.     The Keller mortgage was conditioned upon the payment of a certain promissory note, dated June 5, 1990, in the principal sum of $10,400.00 and bearing interest at the rate of 8¾ % per annum.  A copy of the note is attached to and made a part of this Complaint as Exhibit D.

14.     The property subject to the mortgages is described therein as:

Being all and the same land and premises conveyed to Paula B. Hill by warranty deed of Sherman Taylor, dated August 18, 1987, and of record in Book 60, Pages 113-114 of the City of St. Albans Land Records, and being more particularly described therein as follows:

Being a lot of land, together with all buildings thereon, located on Austin Drive, so-called, in the City of St. Albans.  Further, said lot is designated as Lot No. 4 as shown and depicted on a map entitled "Map of Boundary Survey, Sherman Taylor", dated March 11, 1987, and bearing the seal of Steven M. Brooks, Registered Land Surveyor, which map is recorded in the Land Records of the City of St. Albans.

4

Being all and the same land and premises conveyed to David H. Keller and Robin L. Keller by warranty deed of Paula B. Hill, dated June 5, 1990 and of record in Book 74, Page 320 of the City of St. Albans Land Records.

Being all and the same land and premises conveyed to Robin L. Keller by Quitclaim Deed of David H. Keller dated August 7, 1995 and of record in Book 102, Page 411 of the City of St. Albans Land Records.

Reference is hereby made to the above instruments and to the references contained therein in further aid of this description.

15.  The mortgages further secure repayment of any subsidy granted to the Borrower in the form of interest credit pursuant to a subsidy repayment agreement dated June 5, 1990.  A copy of said agreement is attached to and made a part of this Complaint as Exhibit E.

16.  Under the terms of an interest credit agreement renewal dated June 5, 2006, the monthly payment due from the Borrower was reduced during the agreement's effective period. The most recent interest credit agreement expired on December 4, 2008, at which time the monthly payment shown on the face of the promissory note became effective.  Pursuant to 42 U.S.C. § 1490a and the terms of the mortgage, any interest credit assistance received on any mortgages given on or after October 1, 1979 is subject to recapture upon the disposition of the property.

17.  The assumption agreement and promissory note provide that upon default by the Borrower of any payment, the United States at its option may declare all or any part of any such indebtedness immediately due and payable.  Because the Borrower defaulted on the note, acceleration and demand for full payment took place on January 31, 2017 and notice was sent to her at the address last provided to RHS by the Borrower.  The Borrower further defaulted on her obligations by abandoning the property.

18.  Though demand was made, the Borrower refused, neglected, or was unable to pay the amounts due pursuant to the terms of the note.  There is due and owing by the Borrower to the United States as of October 1, 2018, the following sums:

    a.    With respect to the assumption agreement dated June 5, 1990, the Borrower owes principal sum of $24,872.49 plus interest in the amount of $4,567.34, which interest accrues at the daily rate of $5.96.   There is further due and owing interest credit subsidy subject to recapture and principal reduction attributed to subsidy in the amount of $67,747.08, as described in paragraphs 15 and 16 above.  There are further due and owing fees assessed at $12,714.31.

    b.    With respect to the promissory note dated June 5, 1990, the Borrower owes principal sum of $4,372.70 plus interest in the amount of $802.96, which interest accrues at the daily rate of $1.05.   There is further due and owing interest credit subsidy subject to recapture and principal reduction attributed to subsidy in the amount of $10,345.34, as described in paragraphs 15 and 16 above.

19.  On information and belief, in order that it may protect and preserve its security, the United States may be compelled to make advancements for payment of taxes, hazard insurance, water and sewer charges, or other municipal assessments.  Although the nature and amount of such expenses are unknown to the United States at this time, the United States seeks recovery of those expenses, together with interest thereon.

20.  The Borrower is no longer residing at the mortgaged premises and the property is subject to waste and deterioration because it is vacant.  A shortened redemption period of ten days is appropriate and necessary to protect the property and the government's interests.

21.     No other action has been brought to enforce the provisions of the aforesaid promissory note and real estate mortgage, and all conditions precedent to the bringing of the action have been performed or have occurred.

22.     The United States has complied with the requirements of all applicable servicing regulations.

WHEREFORE, THE PLAINTIFF PRAYS:

a.     That the Defendants' equity of redemption be foreclosed in accordance with law;
b.     That the Court enter an order shortening the redemption period to ten days;
c.     That the Court enter, pursuant to the United States' exercise of its right to a foreclosure by public sale, an order for public sale of the mortgaged premises;
d.     That the Court award expenses incurred by Plaintiff to preserve and protect its security;
e.     That the Court fix and allow attorney's fees and other costs and expenses incident to this proceeding;
f.     That the United States of America or the purchaser at the judicial sale be granted a writ of possession in the mortgaged premises;
g.     And for such other and further relief as this Honorable Court may deem just and equitable.

Dated at Burlington, in the District of Vermont, this 2ᵗʰ day of October, 2018.

Respectfully submitted,

UNITED STATES OF AMERICA

CHRISTINA E. NOLAN
United States Attorney

By: _Melissa A.D. Ranaldo_

MELISSA A.D. RANALDO
Assistant U.S. Attorney
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725
Melissa.Ranaldo@usdoj.gov

Form FmHA 1965-15
(Rev. 9-84)

*Keller, David
Robin*

U.S. Department of Agriculture
Farmers Home Administration

**ASSUMPTION AGREEMENT**
Single-Family Housing Loan(s)

☒ Sec. 502    ☐ Sec. 504
Terms:    ☒ Eligible
          ☐ Ineligible

Case Number:
5|3|0|0|6|3|9|0|5|8|3|8|8|7|

This Agreement dated ___June 5___ , 19 _90_ , is between the United States of America, acting through the Farmers Home Administration (herein called the Government), and ___David H. Keller___ , ___and Robin L. Keller___ , (herein called Borrower), whose mailing address is ___4 Austin Drive, St. Albans, VT   05478___

The Government is the holder of debt instrument(s) secured by the following described security instrument(s) executed by ___Paula B. Hill___ , Case Number 530068564980 , on real property described therein which is located in ___Franklin___ County, State of ___Vermont___ :

| Type Instrument | Date Executed | Office Where Recorded | Book/Volume/ Document Number | Page Number |
|---|---|---|---|---|
| Real Estate Mortgage | 08/18/87 | St. Albans City Clerk | Vol 60 | 115-118 |

In consideration of the assumption of indebtedness as herein provided and the Government's consent to this assumption and related conveyance of the security property, if applicable, it is agreed as follows:

1. Borrower hereby assumes liability for and agrees to pay to the order of the Government at the office of the Farmers Home Administration shown below (or other location as may later be specified) the principal sum of ___ SIXTY EIGHT THOUSAND SIX HUNDRED THIRTY FIVE AND 72/100 ------------------------- dollars ($ _68,635.72_ -------------------------------- ) plus interest at the rate of ___ EIGHT AND THREE QUARTERS percent ( _8 3/4_ %) per annum, payable in installments as follows:

$ _531.00_ on ___July 5___ , 19 _90_ , and

$ _531.00_ thereafter on the _5th_ of each ___month___ until the principal and interest are fully paid, except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable ___thirty three___ ( _33_ ) years from the date of this Agreement.

2. Payments of principal and interest shall be applied in accordance with Farmers Home Administration's accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with Farmers Home Administration regulations in effect when a late charge is assessed.

3. The provisions of the debt instrument(s) hereby assumed shall, except as modified herein, remain in full force and effect, and Borrower hereby assumes the obligations of and agrees to comply with all covenants, agreements, and conditions contained in said instrument(s), as modified herein, as though Borrower had executed them as of the date thereof as principal obligor(s).

4. Provisions of the debt and security instrument(s) which require that the borrower occupy the FmHA-financed dwelling or graduate to another credit source do not apply to assumption on ineligible terms.

5. This Agreement is subject to present regulations of the Farmers Home Administration and to its future regulations which are not inconsistent with the express provisions hereof.

UNITED STATES OF AMERICA

By _____
PETER C. FITZGERALD
ACTING COUNTY SUPERVISOR
FARMERS HOME ADMINISTRATION *(Title)*

X David Keller
DAVID H. KELLER  *Borrower*
X Robin Keller
ROBIN L. KELLER  *Borrower*

FmHA County Office Address: ___P.O. Box 192, 101 Lake St., St. Albans, VT   05478___

ORIGINAL - COUNTY OFFICE LOCKED ████    *Position 2*

GOVERNMENT EXHIBIT A

USDA-FmHA
Form FmHA 427-1 VT
(Rev. 4-85)

*Position 5*

# REAL ESTATE MORTGAGE FOR NEW HAMPSHIRE, VERMONT AND VIRGIN ISLANDS

THIS MORTGAGE is made and entered into by <u>Paula B. Hill</u>

residing in <u>Franklin</u> County, or Judicial Division,

State or Territory of <u>Vermont</u>, whose post

office address is <u>Lot #4, Austin Drive, St. Albans, Vermont</u>, in said State, herein called "Borrower," the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government," and:

WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| *Date of Instrument* | *Principal Amount* | *Annual Rate of Interest* | *Due Date of Final Installment* |
|---|---|---|---|
| August 18, 1987 | $60,000.00 | 9% | August 18, 2020 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased after 3 years, as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949 or any other statutes administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance endorsement by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, convey, mortgage, assign and forever warrant unto the Government the following property situated in

the County of <u>Franklin</u>, State of New Hampshire or Vermont, or Judicial Division, Territory of the Virgin Islands.

FmHA 427-1 VT (Rev. 4-85)

GOVERNMENT EXHIBIT
B
PENGAD 800-631-6989

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (b) release any party who is liable under the note or for the debt from liability to the Government, (c) release portions of the property and subordinate its lien, and (d) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government–whether once or often–in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefits of any such State or Territorial laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex or national origin.

(21) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)    To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)    To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)    If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)    Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)    All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)    To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)    To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)    To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)    To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)    To comply with all laws, ordinances, and regulations affecting the property.

(22)  Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at P. O. Box 588, Montpelier, Vermont 05602, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(23)  Upon default by Borrower as aforesaid, the Government may foreclose this instrument as authorized or permitted by the laws then existing of the jurisdiction where the property is situated and of the United States of America, on terms and conditions satisfactory to the Government, including but not limited to foreclosure by (a) statutory power of sale, or (b) advertisement and sale of the property at public auction to the highest bidder in one or more parcels at the Government's option and at the time and place and in the manner and after such notice and on terms as may be required by statute or as may be determined by the Government if not contrary to statute, or (c) written agreement hereafter made between Borrower and the Government.

(24)  If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

PROVIDED that if all the indebtedness hereby secured is duly paid and each and every covenant, condition, agreement, and obligation, contingent or otherwise, contained herein, secured hereby or arising hereunder is fully performed and discharged, this mortgage shall be void,; otherwise to remain in full force and effect.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this _____ 1st _____

day of _____ August _____, 19 87.

Signed, sealed, and delivered in the
presence of:

_____ John E Hurlbut _____ (Witness)          _____ Paul B Hill _____ (SEAL)

_____ Timothy S Hurlbut _____ (Witness)          _____ (SEAL)

STATE OR TERRITORY OF _____ Vermont _____

COUNTY OR JUDICIAL DIVISION OF _____ Franklin _____          **ACKNOWLEDGMENT**

On this _____ 18th _____ day of _____ August _____, 19 87, before me, the undersigned, a Notary Public in and

for said State or Territory and County or Judicial Division, personally appeared _____ Paula B Hill _____

_____,

individually known to me and by me known to be the parties executing the foregoing instrument, and to me acknowledged the said instrument to be executed by them as their free act and deed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal on the date above written.

My commission expires _____ 2/10/91 _____          _____ Timothy S Hurlbut _____

(NOTORIAL SEAL)          _____ Notary Public

ST. ALBANS CITY CLERK'S OFFICE
Received for record August 18, 1987
at 10:40 A.M. and recorded in the
St. Albans City Land Records,
Volume 60, Pages 115-118.

☆ U.S. Government Printing Office: 1985—501-578

ATTEST: _____ Kathy S. Middlemiss _____ Ass't. City Clerk

Being a lot of land, together with all buildings thereon, located on Austin Drive, so-called, in the City of St. Albans.  Further, said lot is designated as Lot No. 4 as shown and depicted on a map entitled Map of Boundary Survey, Sherman Taylor, dated March 11, 1987 and bearing the seal of Steven M. Brooks, Registered Land Surveyor, which map is recorded in the Land Records of the City of St. Albans.  Said lot is more particularly described as follows:

Commencing at the southeasterly corner of the within conveyed premises; thence continuing on a bearing of S42-13W for a distance of 51.0 feet, more or less, to a point; thence continuing on a bearing of N61-44W for a distance of 117.3 feet, more or less, to a point; thence turning and proceeding on a bearing of N51-58E for a distance of 18.4 feet, more or less, to a point; thence continuing on a bearing of N44-58W for a distance of 56.6 feet, more or less, to a point; thence turning and proceeding on a bearing of N61-31E for a distance of 56.7 feet, more or less; thence turning and proceeding on a bearing of S49-39E for a distance of 148.6 feet, more or less, to the point or place of beginning.

The above-described lands and premises are conveyed subject to all the terms and conditions of Land Use Permit No. EC-6-1222.

Also conveyed herewith is a right of way of ingress and egress on Austin Drive, so-called, until such time that said Austin Drive is accepted by the appropriate municipal authority.

Being a portion of the lands and premises conveyed to Sherman Taylor by warranty deed of Nicholas Marketing, Inc. which deed is dated February 18, 1987 and recorded in Book 57, Page 508 of the Land Records of the City of St. Albans.

Reference is hereby made to the aforementioned deeds and the record thereof and to the deeds and records therein referred to in further aid of this description.

That the above-described lands and premises are conveyed subject to a 20-foot wide utility easement in favor of the City of St. Albans for the purpose of maintaining, repairing, and replacing a certain water line which is located within the said easement.  The said easement is located on the border of Lots #4 and #5.  Further, the City of St. Albans has the right to extend the said line to New Street, so-called.  After any construction work performed by the City of St. Albans, its agents or assigns, the premises shall be returned to its original condition as reasonable as possible.

USDA-FmHA
Form FmHA 427-1 VT
(Rev. 7-88)

*Position 5*

Pg. 322-28.

St. ALBANS CITY CLERK'S OFFICE
le~ for recorded June 6, 1990
~.~ 2rM and is recorded in St.
Albans City Land records Vol. 74

ATTEST ~~~~~~~~~~
City Clerk

## REAL ESTATE MORTGAGE FOR NEW HAMPSHIRE, VERMONT AND VIRGIN ISLANDS

THIS MORTGAGE is made and entered into by    DAVID H. KELLER and ROBIN L. KELLER

residing in _____ Franklin _____ County, or Judicial Division,

State or Territory of _____ Vermont _____ , whose post

office address is _____ 4 Austin Drive, St. Albans _____ , in said State,
herein called "Borrower," and the United States of America, acting through the Farmers Home Administration, United States
Department of Agriculture, herein called the "Government," and:

WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption
agreement(s), herein called "note," which has been executed by Borrower, is payable to the order of the Government, au-
thorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is
described as follows:

| *Date of Instrument* | *Principal Amount* | *Annual Rate of Interest* | *Due Date of Final Installment* |
|---|---|---|---|
| 06/05/90 | 10,400.00 | 8.75 | 06/05/2023 |
| 06/05/90 | 68,635.72 | 8.75 | 06/05/2023 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument
may be increased after 3 years, as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the
payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949
or any other statutes administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the
Government, or in the event the Government should assign this instrument without insurance of the note, this instrument
shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of
the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage
to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower
by the Government pursuant to 42 U.S.C. §1490a.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in
the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt
payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision
for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure per-
formance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance
endorsement by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of
all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every
covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant,
convey, mortgage, assign and forever warrant unto the Government the following property situated in

the County of _____ Franklin _____ , State of New Hampshire or Vermont, ~~~~~~~~~~~~~~~~~~~~ ,
~~~~~~~~~~~~~~~~~~~~

FmHA 427-1 VT (Rev. 7-88)

GOVERNMENT
EXHIBIT
C

PENGAD 800-631-6989

Being all and the same land and premises conveyed to Paula B. Hill by warranty deed of Sherman Taylor, dated August 18, 1987, and of record in Book 60, Pages 113-114 of the City of St. Albans Land Records, and being more particularly described therein as follows:

"Being a lot of land, together with all buildings thereon, located on Austin Drive, so-called, in the City of St. Albans. Further, said lot is designated as Lot No. 4 as shown and depicted on a map entitled "Map of Boundary Survey, Sherman Taylor", dated March 11, 1987, and bearing the seal of Steven M. Brooks, Registered Land Surveyor, which map is recorded in the Land Records of the City of St. Albans.

Being all and the same land and premises conveyed to David H. Keller and Robin L. Keller by warranty deed of Paula B. Hill, dated evendate and to be recorded herewith.

Reference is hereby made to the above instruments and to the references contained therein in further aid of this description.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)   To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)   To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)   If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)   Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)   All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)   To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)   To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)   To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)   To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)   To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (b) release any party who is liable under the note or for the debt from liability to the Government, (c) release portions of the property and subordinate its lien, and (d) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government–whether once or often–in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefits of any such State or Territorial laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex or national origin.

(21) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22)  This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(23)  Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at P. O. Box 588, Montpelier, Vermont 05602, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(24)  Upon default by Borrower as aforesaid, the Government may foreclose this instrument as authorized or permitted by the laws then existing of the jurisdiction where the property is situated and of the United States of America, on terms and conditions satisfactory to the Government, including but not limited to foreclosure by (a) statutory power of sale, or (b) advertisement and sale of the property at public auction to the highest bidder in one or more parcels at the Government's option and at the time and place and in the manner and after such notice and on terms as may be required by statute or as may be determined by the Government if not contrary to statute, or (c) written agreement hereafter made between Borrower and the Government.

(25)  If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

PROVIDED that if all the indebtedness hereby secured is duly paid and each and every covenant, condition, agreement, and obligation, contingent or otherwise, contained herein, secured hereby or arising hereunder is fully performed and discharged, this mortgage shall be void,; otherwise to remain in full force and effect.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this ⎯⎯⎯⎯ 5th ⎯⎯⎯⎯

day of ⎯⎯⎯⎯⎯ June ⎯⎯⎯⎯⎯ , 19 90 .

Signed, sealed, and delivered in the
presence of:

_____          _____ (SEAL)
                        *(Witness)*                          David H. Keller

_____          _____ (SEAL)
                        *(Witness)*                          Robin L. Keller

STATE OR TERRITORY OF ⎯⎯⎯⎯ VERMONT ⎯⎯⎯⎯

COUNTY OR JUDICIAL DIVISION OF ⎯⎯⎯ FRANKLIN ⎯⎯⎯                    **ACKNOWLEDGMENT**

On this ⎯⎯⎯ 5th ⎯⎯⎯ day of ⎯⎯⎯ June ⎯⎯⎯ , 19 90 , before me, the undersigned, a Notary Public in and

for said State or Territory and County or Judicial Division, personally appeared ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

⎯⎯⎯ DAVID H. KELLER and ROBIN L. KELLER ⎯⎯⎯ ,

individually known to me and by me known to be the parties executing the foregoing instrument, and to me acknowledged the said instrument to be executed by them as their free act and deed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal on the date above written.

My commission expires ⎯⎯⎯ 02/10/91 ⎯⎯⎯          _____
                                                                        *Notary Public.*

*(NOTARIAL SEAL)*                                        ✰U.S. Government Printing Office: 1988—501-475

PROPERTY DESCRIPTION FOR HILL TO KUBER.

Being all and the s[ ] lands and premises conveyed to Paula B. Hill by Warranty Deed of Sherman Taylor dated August 18, 1987 and recorded in Volume 60, Pages 113-114 of the City of St. Albans Land Records and being more particularly described therein as follows:

"Being a lot of land, together with all buildings thereon, located on Austin Drive, so-called, in the City of St. Albans.  Further, said lot is designated as Lot No. 4 as shown and depicted on a map entitled Map of Boundary Survey, Sherman Taylor, dated March 11, 1987 and bearing the seal of Steven M. Brooks, Registered Land Surveyor, which map is recorded in the Land Records of the City of St. Albans.  Said lot is more particularly described as follows:

Commencing at the southeasterly corner of the within conveyed premises; thence continuing on a bearing of S42-13W for a distance of 51.0 feet, more or less, to a point; thence continuing on a bearing of N61-44W for a distance of 117.3 feet, more or less, to a point; thence turning and proceeding on a bearing of N51-58E for a distance of 18.4 feet, more or less, to a point; thence continuing on a bearing of N44-58W for a distance of 56.6 feet, more or less, to a point; thence turning and proceeding on a bearing of N61-31E for a distance of 56.7 feet, more or less; thence turning and proceeding on a bearing of S49-39E for a distance of 148.6 feet, more or less, to the point or place of beginning.

The above-described lands and premises are conveyed subject to all the terms and conditions of Land Use Permit No. EC-6-1222.

Also conveyed herewith is a right of way of ingress and egress on Austin Drive, so-called, until such time that said Austin Drive is accepted by the appropriate municipal authority.

Being a portion of the lands and premises conveyed to Sherman Taylor by Warranty Deed of Nicholas Marketing, Inc. which deed is dated February 18, 1987 and recorded in Book 57, Page 508 of the Land Records of the City of St. Albans.

Reference is hereby made to the aforementioned deeds and the record thereof and to the deeds and records therein referred to in further aid of this description.

That the above-described lands and premises are conveyed subject to a 20-foot wide utility easement in favor of the City of St. Albans for the purpose of maintaining, repairing, and replacing a certain water line which is located within the said easement.  The said easement is located on the border of Lots #4 and #5.  Further, the City of St. Albans has the right to extend the said line to New Street, so-called.  After any construction work performed by the City of St. Albans, its agents or assigns, the premises shall be returned to its original condition as reasonable as possible."

1990 property taxes shall be prorated at the time of closing.

USDA-FmHA
Form FmHA 1940-16
(Rev. 8/87)

## PROMISSORY NOTE

| TYPE OF LOAN |
|---|
| 502  RH-I |

| STATE | VERMONT |
|---|---|
| COUNTY | FRANKLIN |
| CASE NO. | 53-006-390583887 |

Date _____ JUNE 5 _____, 19 90.

FOR VALUE RECEIVED, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration,

United States Department of Agriculture, (herein called the "Government") at its office in _____

ST. ALBANS, VERMONT    05478 _____

THE PRINCIPAL SUM OF ___ TEN THOUSAND FOUR HUNDRED AND 00/100 ------------------------

DOLLARS ($ ___ 10,400.00 -------------------------- ), plus INTEREST on the UNPAID PRINCIPAL of

EIGHT & THREE QUARTERS  PERCENT ( ___ 8 3/4 ___ %) PER ANNUM.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

☐ I.   Principal and Interest payments shall be deferred. The interest accrued to _____, 19____

shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in _____ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of

such new Principal herein $_____ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II.   Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the _____

of each _____ beginning on _____, 19____, through _____, 19____,

Principal and later accrued Interest shall be paid in _____ installments as indicated in the box below;

☒ III.   Payments shall not be deferred. Principal and Interest shall be paid in ___ 396 ___ installments as indicated in the box below:

| |
|---|
| $ ___ 81.00 ___ on ___ JULY 5 ___, 19 90, and |
| $ ___ 81.00 ___ thereafter on the ___ 5th ___ of each ___ MONTH ___ until the PRINCIPAL and INTEREST are fully paid except that the FINAL INSTALLMENT of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and PAYABLE ___ THIRTY THREE ___ ( ___ 33 ___ ) YEARS from the DATE of this NOTE. The consideration herefor shall support any agreement modifying the foregoing schedule of payments. |



*Position 2*

GOVERNMENT
EXHIBIT
D

FmHA 1940-16 (Rev. 8/87)



If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the pre-payment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit else-where to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and coopera-tive rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certifica-tion," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for prop-erty purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guar-anteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

Presentment, protest, and notice are hereby waived.

_David H. Keller_ _(BORROWER)_ (SEAL)

DAVID H. KELLER

_Robin L. Keller_ _(SPOUSE)_ (SEAL)

ROBIN L. KELLER

4 Austin Drive

St. Albans, VT   05478

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ 10,400.00 | 06/05/90 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ 10,400.00 | 06/05/90 |

☆ U.S. Government Printing Office: 1987—723-431/61818

 _Position 2_  FmHA 1940-16 (Rev. 8/87)

FmHA Instruction 1951-I
Exhibit A

## UNITED STATES DEPARTMENT OF AGRICULTURE
## FARMERS HOME ADMINISTRATION

### Subsidy Repayment Agreement

Date of Note <u>6/5/90</u>   Amount of Note $<u>68,635</u>.72 Date of mortgage   <u>6/5/90</u>

Date of Note <u>6/5/90</u>   Amount of Note $<u>10,400.00</u>Date of mortgage   <u>6/5/90</u>

Type of assistance:

                502 RH Assumption &
                  Subsequent Loan

Address of Property:  4 Austin Drive

                St. Albans, VT  05478

1. Interest credit /X/
2. Homeownership Assistance
   Program /  /

BORROWER: KELLER, DAVID H.

CO-BORROWER: KELLER, ROBIN L.

1    This agreement entered into pursuant to 7 CFR 1951-I, between the United
States of America, acting through the Farmers Home Administration (FmHA)
(herein called "the Government") pursuant to section 521 of Title V of the
Housing Act of 1949 and the borrower(s) whose name(s) and address(es) appears
above (herein sometimes referred to as "borrower"), supplements the note(s)
from borrower to the Government as described above, and any promissory
note(s) for loans made to borrower in the future by the Government.
Such future notes, when executed, will be listed below the signature line
of this Subsidy Repayment Agreement.

2    I (we) agree to the conditions set forth in this agreement for the
repayment of the subsidy granted me (us) in the form of interest credits
or Homeownership Assistance Program (HOAP) subsidy (hereinafter called
"subsidy").

3    I (we) agree that the real property described in the mortgage(s)
listed above is pledged as security for repayment of the subsidy received
or to be received.  I (we) agree that the subsidy is due and payable upon
the transfer of title or non-occupancy of the property by me (us).  I
(we) understand that the real estate securing the loan(s) is the only
security for the subsidy received.  I (we) further understand that I (we)
will not be required to repay any of the subsidy from other than the value
(as determined by the Government) of the real estate, mortgaged by myself
(ourselves) in order to obtain a Section 502 Rural Housing (RH) loan.

(9-27-79)  SPECIAL PN

GOVERNMENT
EXHIBIT

E

PENGAD 800-631-6989

FmHA Instruction 1951-I
Exhibit A
Page 2

4    I (we) understand that so long as I (we) continue to own the property
and occupy the dwelling as my (our) residence, I (we) may repay the principal
and interest owed on the loan and defer repaying the subsidy amount until
title to the property is conveyed or the dwelling is no longer occupied by
me (us).  If such a request is made, the amount of subsidy to be repaid
will be determined when the principal and interest balance is paid.  The
mortgage securing the FmHA RH loan(s) will not be released of record until
the total amount owed the Government has been repaid.

5    I (we) agree that Paragraph 6 of this agreement is null and
void should the property described in the mortgage(s) be voluntarily
conveyed to the Government or liquidated by foreclosure.

6    When the debt is satisfied by other than voluntary conveyance of the
property to the Government or by foreclosure, I (we) agree that sale
proceeds will be divided between the Government and me (us) in the
following order:

    (a)  Unpaid balance of loans secured by a prior mortgage as well as
    real estate taxes and assessments levied against the property which
    are due will be paid.

    (b)  Unpaid principal and interest owed on FmHA RH loans for the
    property and advances made by FmHA which were not subsidy and are
    still due and payable will be paid to the Government.

    (c)  I (we) will receive from the sale proceeds actual expenses
    incurred by me (us) necessary to sell the property.  These may include
    sales commissions or advertising cost, appraisal fees, legal and
    related costs such as deed preparation and transfer taxes.  Expenses
    incurred by me (us) in preparing the property for sale are not allowed
    unless authorized by the Government prior to incurring such expenses.
    Such expenses will be authorized only when FmHA determines such expenses
    are necessary to sell the property, or will likely result in a return
    greater than the expense being incurred.

    (d)  I (we) will receive the amount of principal paid off on the
    loan calculated at the promissory note interest rate.

    (e)  Any principal reduction attributed to subsidized interest
    calculations will be paid to the Government.

    (f)  I (we) will receive my original equity which is the difference
    between the market value of the security, as determined by the
    FmHA appraisal at the time the first loan subject to recapture of
    subsidy was made, and the amount of the FmHA loan(s) and any
    prior lien.  This amount is _____-0-_____ and represents
    __-0-_____ percent of the market value of the security.  (The

percent is determined by dividing my (our) original equity by
the market value of the security when the loan was closed.) The
dollar amounts and percent will be entered at the time this agreement
is signed by me (us) and will be part of this agreement.

(g) The remaining balance, after the payments described in (a) thru (f)
above have been paid is called value appreciation. The amount of
value appreciation to be paid to the Government, in repayment or
the subsidy granted, is the lesser of (1) the full amount of the subsidy
(2) an amount determined by multiplying the value appreciation by the
appropriate factor in the following table.

Average interest rate paid by me (us)

| No. of Months the Loan was Outstanding | 1% or Less | 1.1 to 2% | 2.1 to 3% | 3.1 to 4% | 4.1 to 5% | 5.1 to 6% | 6.1 to 7% | 7.1 or greater |
|---|---|---|---|---|---|---|---|---|
| 0 to 59 | .78 | .68 | .60 | .51 | .44 | .32 | .22 | .11 |
| 60 to 119 | .75 | .66 | .58 | .49 | .42 | .31 | .21 | .11 |
| 120 to 179 | .73 | .63 | .56 | .48 | .40 | .30 | .20 | .10 |
| 180 to 239 | .65 | .56 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 to 299 | .59 | .51 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 to 359 | .53 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 to 396 | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

(h) I (we) will receive the amount of value appreciation less the
amount paid the Government as determined in (g) above. I (we) will
also receive an additional amount in proportion to my original equity
by reducing the amount of value appreciation due to the Government by
the percent of my (our) original equity as shown in (f) above.

(i) If I (we) am the recipient of HOAP, the amount of value appreciation
to be recaptured will be calculated as if I (we) had paid 1 percent
interest on the loan, unless the average interest rate paid by me (us)
was greater than 1 percent. In such cases it will be determined based
on the average interest rate paid by me (us).

(j) If this agreement is for a subsequent loan(s) only, the amount
of repayment determined in (g) above will be reduced by the following
percent: _____. This percent will be determined by dividing the
amount of the loan(s) subject to recapture by the total outstanding
RH debt. This percentage will be entered at the time I (we) sign this
agreement.

(k) If this agreement is for more than one loan that is subject to
recapture, the subsidy repayment computations will be based on the total
subsidy granted on all loans.

(9-27-79)  SPECIAL PN

FmHA Instruction 1951-I
Exhibit A
Page 4

7      When a FmHA RH loan is repaid by other than foreclosure, voluntary
conveyance, or sale of property, the amount of subsidy to be repaid the
Government will be determined in the same manner as described in paragraph
6 of this Exhibit but based on the appraised value determined by FmHA
instead of sales price.  In such cases, the subsidy due the Government
will remain a lien on the property until paid.  It must be paid upon non
occupancy, sale, or transfer of title to the property.

8      I (we) have read and agree to the provisions of this agreement.

X _____ Borrower

X _____ Co-Borrower

X _____
         Date Signed

Accepted and Agreed to
By _____  (FmHA Official)
   PETER C. FITZGERALD
   Acting County Supervisor     (Title)
   _____
         Date

oOo

JS 44  (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
Robin L. Keller, et al.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Franklin
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Melissa A.D. Ranaldo, AUSA, U.S. Attorney's Office, P.O. Box 570,
Burlington, VT 05402, (802) 951-6725

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
      Plaintiff

☐ 2  U.S. Government
      Defendant

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane        **PERSONAL INJURY** | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product ☐ 365 Personal Injury - | ☐ 690 Other | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability            Product Liability | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander               Pharmaceutical | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Personal Injury | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability            Product Liability | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine         ☐ 368 Asbestos Personal | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product    Injury Product | | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability               Liability | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle **PERSONAL PROPERTY** | Act | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle ☐ 370 Other Fraud | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability ☐ 371 Truth in Lending | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury                Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - ☐ 385 Property Damage | Leave Act | | Act |
| | Medical Malpractice   Product Liability | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
      Proceeding

☐ 2  Removed from
      State Court

☐ 3  Remanded from
      Appellate Court

☐ 4  Reinstated or
      Reopened

☐ 5  Transferred from
      Another District
      *(specify)*

☐ 6  Multidistrict
      Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 1490a
Brief description of cause:
Foreclosure

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
125,422.22

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   10/2/2018

SIGNATURE OF ATTORNEY OF RECORD   *Melissa A.D. Ranaldo*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE   1012   MAG. JUDGE _____

2:18-cv-16D